Number 152138, Jimenez-Castaner v. Liberty Mutual Good morning. May it please the Court, Juan Martinez on behalf of Appellant Dr. Gerson Jimenez-Castaner. I would request the Court for three minutes of rebuttal. Yes. Essentially, the controversy before this Court is one regarding coverage. Whether or not coverage should be afforded to Dr. Gerson Jimenez in light of the Directors and Officers Executive Advantage policy by Liberty Mutual. The District Court rendered, in its opinion and order, a decision stating that the policy in question would not apply in light of the fact that the definition of what a claim or the initial claim. Counsel, can you pull your mic up a little closer? Oh, I apologize. No, that's not. Okay. And keep your voice up. Okay. So the District Court essentially established that the initial claim that should have been notified to Liberty occurred out of the policy period that was involved in the complaint against Liberty Mutual. And the reasoning behind this is the Court's interpretation of what constitutes an interrelated wrongful act. It is our contention that prior to analyzing what interrelated wrongful acts are, we need to decipher what wrongful acts are under the policy. Counsel, I just want to get the lay of the land straight on a couple of facts that I had some trouble understanding. Maybe you could help me before you get into this part of your argument. So does the record disclose, is there any way that we would know whether there was a pre-existing policy, a 2010-2011 policy that is similar to the policy that you made the claim under? The thing is, Judge, that yes, the answer to your question is yes, because the policy which we are referencing includes a prior litigation date. Okay. I just want to know if there's a document that the record discloses that both sides would agree that there is such a policy. I don't think that there would be any controversy in terms of the existence of that policy. And did the entity seek coverage under that prior policy when the 2011 litigation was commenced? No, and the reason they did not do so was because the 2011 litigation involved medical malpractice claims. So what they did was that they sent that medical malpractice claim to their medical malpractice professional liability policy, which was Admiral Insurance. They have a policy for professional liability. And I have one more question. Who uncovered the 2011-2012 policy and had it submitted? Was that your client? Was that the entity? Was it direct communications between your client and the insurance agency? Who actually uncovered that policy? Who found it? The insurer, the insurer, Liberty, because the claim is made for the very first time in February 2012, which falls within the scope of the November 2011, November 2012 policy. So it was first reported, a claim was first reported in February 2012. That claim was a suspicion of a potential claim in reality. And the formal claim, which was the second amended complaint. I'm sorry. I mean the request for coverage. The broker. Okay. Who found the insurance policy that that request for coverage was made under? How was that policy identified? Was it by the broker? Was it by your client? Or was it by the insurance company? We submitted the claim to the broker. The broker in turn submits it to the insurance policy. And I guess it's, you know, because the claim is made within the policy period, it is understood that that is the policy which should respond for the acts, because it's a claims made policy. All right. Please continue with your argument. Okay. So essentially. Can I ask a question on that point that you're making before he proceeds? So if the claim was made pursuant to an earlier policy that was with the same insurance company, so we presume they had the policy in their files, there would not be an argument as to timeliness. Is that correct? No, because a claim for under the directors and officers policy was never made until February 2012. The initial claim was made for medical malpractice under a different insurer, which was the professional liability insurer, not the insurer for directors and officers. So I understand that. But the point I think Judge Howard is trying to make is that there was an earlier policy, which is identical to the one at issue here, which if the claim had been made pursuant to that policy, perhaps, there would not be a timeliness issue. But it is our understanding. The thing is that there never was a claim to report under that previous policy. I understand that, but the court found differently. So what I'm trying to figure out is if we agree with the court. The point is that there's still a policy that potentially covers it. Pursuant to the district court's theory, then yes, there would be a policy that would cover it. Is that policy in the record? I believe it isn't. But the fact is that once again, the controversy here hinges on when the claim was supposed to have been made. So I think these questions are helpful to you. Yeah, yeah, yeah. Okay, right. And the questions are suggesting essentially potentially you can't lose. Because there is another policy. Exactly. Pursuant to the court's theory. The only way you can't lose is if the record actually shows there is another policy. So is there anything in the record that would enable us to say there is another policy? So that even if the district court is right, all it's finding is that the claim was made pursuant to the other policy. Okay. I am not sure that the policy per se is attached to the record, but reference is made to the fact that the policy exists. And I take it you never made an argument in the motion for reconsideration that heads you win, tails you win. Well, in the motion for reconsideration, we in fact did state to the court that a second policy does exist. We did raise that issue. And that's when the court denies the motion for reconsideration stating that we waived that argument because that's something that we should have said beforehand. But once again, the reasoning behind that is because there's really no need to make reference to that prior policy because there is a prior litigation date on the policy we were invoking that stated basically that any facts up until 2008, until the 2011-2012 policy date, any facts within reported during that policy period would be covered by the insurance policy. And once, you know, I cannot stress enough how what the district court is misconstruing the fact that the claim should have been made under that policy, under the second policy or under the November 2010, November 2011 policy, because there was no claim to be made at that point in time. Counselor, one more time. Before you move on to that argument, though, I just have to do one more follow-up to Judge Howard's question. So the insurance broker is the person who made the decision as to which policy the claim should be submitted? Yes, the insurance broker. We address, once allegations are formally made regarding the medical director, who's my client, we inform the broker and the broker in turn informs Liberty Mutual. And is the broker considered under Puerto Rico law the agent of Liberty? Well, we have on the record communications between the broker and Liberty's agent where Liberty's agent states that any claim to be referred to Liberty Mutual can only be made once there is a direct allegation of director impropriety made in a complaint. And that was not the case in the initial complaint because the initial complaint was limited exclusively to medical malpractice. That is why our contention is that at the time that the medical malpractice claim was filed, it was impossible to notify the director's and officer's policy. It just didn't make any sense because there were no claims in that first complaint regarding any impropriety on behalf of our director and officer. Once the complaint is amended, that is when the claim is notified under the director's and officer's policy. The problem is that the district court is stating that under the interrelated wrongful acts, the date that should be considered is the date of the initial complaint. But our contention is that in order prior to delving into the definition of interrelated wrongful acts, we have to tackle the definition of wrongful acts. And the definition of wrongful acts under the DNO policy, the director's and officer's policy, does not contemplate medical malpractice. Wrongful acts under director's and officer's policy is circumscribed to claims that emanate from wrongful acts of directors and officers. So in order for interrelated wrongful acts to apply, it would have to deal with an example of two wrongful acts that emanate from a director and officer, not a case such as this that has to deal with medical malpractice, and subsequently is amended in order to include claims against the directors and officers. So that is why our position is that the claim that was made was made on time because it was the very first time that any claim related to the director and officer was made. The argument about interrelated acts that you're making now was made prior to the motion for reconsideration or only after the motion for reconsideration? Well, I understand that we raised that in the brief because that was essentially the first. Yeah, in the first, in the opposition, in the response and opposition to the summary judgment. Thank you. May it please the court, good morning. My name is Eric Perez Ochoa on behalf of Appalachian Liberty Mutual. This is an insurance coverage dispute and the policy at issue, it's a claims made directors and officers policy. Such policy provides coverage only for claims that are first made and reported during the respective policy period. Notably, the policy at issue in this case, it's only the policy covering the period from 2011 to 2012. In pursuing this appeal, Appalachian does not take the position that the policy is ambiguous. None of the parties do. In the absence of claimed ambiguity, as is the case here, the role of the court is simply to apply the provisions of the policy as written. Instead, this appeal almost entirely focuses on the theory by Appalachian that the prior litigation date in the 2011-2012 policy of November 30th, 2008, which is referenced in the declarations, had the effect of somehow modifying the inception period of the policy in such a way that any litigation that commences after such date is automatically covered, regardless of whether the claim is made before the effective policy period. Plainly, Appalachian is asking this court to redraft the policy. And to answer one of the questions by the judges, the 2010-2011 policy is not in the record, as he has conceded. And more importantly, in the coverage action that they filed under civil number 13-1640, how the coverage action relates to the policy of 2011-2012. Now, the district court rejected the appellant's theory and properly decided that the claim against appellant as medical director was made before the policy period and thus was not covered. In reaching that conclusion, the court applied the plain, clear, and unambiguous policy language and reasoned that the claim first made in March 2011 against the hospital and other insurers and the claim made in April of 2012 were factually connected. And therefore, both were deemed a single claim under the limit of liability clause first made on the date of the earliest of the claims. Both claims are related. They share the same facts, circumstances, and situations and events surrounding the medical services. Do you agree, though, that if it had been a medical malpractice claim, it couldn't have been brought under this policy? Because of the medical malpractice exclusion, endorsement 16. So does that not bear on the question of how to think about what interrelated wrongful acts are for purposes of determining whether they're related? It just seems odd that you would say this is related to a claim that could not have been brought under this policy. Unless there's some text that you're relying on that would make that clear. Absolutely. And I was going to the text. And when you go to the text of what an interrelated wrongful act means, it's extremely broad as referenced in the policy. Well, I agree that interrelation is going to be, but I think his argument is it's with respect to a wrongful act. So is it clear that a wrongful act includes something that could not result in a claim under the policy? Because that seems to be your argument. And it is the argument. So what's the text that would suggest that a wrongful act can include something that could not result in a claim under this policy? That would be the text having to do with the definition of what is a wrongful act. And that's Section 2520 of the policy, which means any actual or alleged error, misstatement, misleading statement, act or mission, neglect or breach of duty, actually or alleged, committed or attempted by the insured persons in their capacities as such, or with respect to the insuring agreement by the insured organization. By tying the insured organization to the hospital, that's how we can tie in. But that first, maybe I'm not following something. The first claim didn't allege a wrongful act by the organization, did it? Yes, it did. The very first. The first claim of March 21st, 2011, it did allege wrongful acts by the insured organization. It certainly did. And other doctors. It was amended to include admiral insurance one time, which is a professional liability carrier. And then in April 2012, it was amended to join and include the doctor, the medical director, as a defendant in that particular action. So, clearly. It was wrongful acts by the organization only relative to claims of medical negligence, not supervisory negligence. Well, when you look at some of the allegations in that first pleading, some of the allegations go beyond your typical malpractice claim. It does mention negligence by the personnel. And some of the allegations in that complaint arguably, you know, could be factually connected to the role of the medical director in the hospital. But if you don't have a good case basis to file a supervisory negligence claim, an attorney is submitting themselves to Rule 11 sanctions, first of all. But it seems like that it isn't until the discovery was completed that they had information relative to that supervisory negligence. It was after discovery. But that is right. But when you go at the language of the policy and you connect that there are wrongful acts that are alleged, first of all, in March 2011, and then there's a subsequent claim in April 2012 that relate. And when you look at the broad meaning of the wrongful acts language with the interrelated wrongful acts provision, they are tied because Could the appellant here have filed a claim for coverage at the time of the initial what you're calling wrongful act that was alleged? Against whom? For coverage by you, by the insurer. In March 21, 2011? Based on the allegation that was made at that time, would if he had any basis for going to the insurance company to get coverage? No. So what is the policy rationale for reading the contract in the way you're asking us to read it? Because what it means is he can't get coverage when it's initially filed. But the clock starts running on him. Sure. Then the clocks run out, and now he could file, and you say, well, clock ran out. What's the reason to do that? Even if we were to consider that policy that's not in the record, the policy, prior policy of 2010-2011, the position of liberty is that there are still two provisions that would exclude coverage of the claims made by the Joelleen plaintiffs in 11 of 2078, which is the section 5. Now you're just saying that even if it is timely filed. Yes. But I first want to understand what possible argument there is for reading it in the way you're suggesting that would make it not timely filed. Is there a reason? The policy period. It has a policy period. Well, it has a policy period for wrongful acts. What is a reason to read the wrongful acts provision in the way you're suggesting? Because what it seems to result in is a clock running on a potential claimant against your company when they are powerless to actually file a claim during the period when the clock is running. I just don't get that. And I think it would be the answer perhaps would be in section 9.2 of the policy, which reads that all claims arising from the same wrongful act or interrelated wrongful acts shall be deemed one claim. But that just takes us back to the question of what's a wrongful act. Right. Is there a functional reason to read wrongful act to permit a clock to run on a claim that you couldn't possibly get coverage under this insurance company? It's the broadness of the language. Further in 9.2, isn't the reason provided for why you would consider interrelated claims to be one claim, and they relate back to the first file claim, and that is it's all about limit of liability? Yes. That doesn't go to the argument that you're making here today, that there should be no coverage.  Yeah, but Appellant's main argument is not that. Appellant's main argument is that the prior litigation date, which is a different creature and has a different purpose and mechanism, simply doesn't allow for any claims after 2008 to be covered under this policy. And, you know, that is the main argument that Appellant is making before this Court. And that prior litigation date is simply a strict deadline bearing claims predating the policy. It doesn't give them the added coverage that they want. And regardless, the 2010-2011 policy, it's not even properly before this Court because it's not in the record. It was never alleged. And, in fact, they raised it for the very first time on a motion for reconsideration. So we understand that the issue was waived at best. But you do acknowledge that they raised the existence of the 2010-2011 policy in their motion for reconsideration? They did raise it for the first time in reconsideration, and the judge, you know, understood, the trial judge understood that it's a waived argument. Well, how are you prejudiced? I mean, the policy is a liberty, the prior policy allegedly is a liberty policy. It is a liberty policy. And I think the issue of prejudice, quite frankly and respectfully, it's not the issue. I mean, the issue is whether reading all of these terms and conditions together, you know, there is coverage for the claims that they are making against the medical director. And we understand that they don't because they are not covered because they are outside the policy period, number one. And even if they were, Sections 5.1 and Endorsement 16, which is the absolute medical malpractice exclusion, would apply. So this policy, either the 2010-2011, 2012-2012, simply does not provide coverage for the type of claims that they are making against the appellant. And that would be the position of liberty. Thank you. Thank you. Very briefly, our main argument has nothing to do with the 2010-2011 policy. That's too bad. In the sense that the issue here is whether or not there existed an obligation for my client, who was not even mentioned in the first complaint, to notify liberty that there may have been a potential claim against him when the complaint was initially filed in March 2011. The answer to your question, Judge, is that March 2011 complaint is exclusively a medical malpractice complaint. It has nothing to do with directors or officers. Does it mention personnel? Yes, medical personnel, nurses, technicians. It has nothing to do with a director or an officer of the company. Why would the hospital notify in good faith to the director's and officer's policy a medical malpractice claim? It makes no sense. Prior to addressing the issue of interrelated wrongful acts, we have to define what a wrongful act is. And wrongful acts pursuant to the definition has to do with the breach or duty of the insured persons. And the insured persons in these types of policies are the directors and officers. It's not even the institution. These policies are made to address issues raised against the directors and officers. But this policy is broader than that, though, isn't it? This has a provision where the entity is actually covered. In terms of the executive advantage policy, in terms of – honestly, Judge, I'm not familiar with that provision. As far as we understand, the insured persons are the directors and officers of the hospital. But regardless, at the end of the day, there was no – and like I said, there's no good faith reason why the hospital would have to notify the directors and officers of this policy when they received a medical malpractice complaint. That's why they notified their medical malpractice policy. I mean, they had no – there was no reason to believe that any type of claim against the directors or officers was going to be raised at that point in time. And that's why it cannot be construed as an interrelated wrongful act. And that is why the claim was made during the correct policy that was involved, because it was made during that policy period. And to want to stretch that, it could be – I mean, I think counsel stated it could be arguably connected. I mean, that's not the reasoning here that is used when an insured receives a complaint. You know, the insured received a medical malpractice complaint, and that's exactly why he addressed it to his medical malpractice policy and not to his DNO policy. And that is the essence of what our complaint – or I guess our allegation in this case is. Thank you.